FILED
JUL 18 2008
Jul 18, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM RATLEFF, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) 08CV4084 |
| | ) JUDGE HOLDERMAN |
| PERFECTION EQUIPMENT, INC., | ) MAGISTRATE JUDGE KEYS |
| Defendant. | ) ) ) ) |

## COMPLAINT

COMES NOW Plaintiff, **TIM RATLEFF** ("Plaintiff" or "Mr. Ratleff") and, by and through his attorney, **Robert C. Scremin**, brings this Complaint against **PERFECTION EQUIPMENT, INC.** ("PERFECTION EQUIPMENT" or "the Company") and states as follows:

### I. PARTIES

1. Mr. Ratleff, Plaintiff, is African-American/Black and at all times pertinent to this cause of action was employed by PERFECTION EQUIPMENT.

2. PERFECTION EQUIPMENT, Inc., is a company with over fifteen employees as defined by Title VII of the Civil Rights Act of 1964, and located at 4259 Lee Avenue, Gurnee, Illinois 60031.

### II. JURISDICTION AND VENUE

3. The United States District Court, Northern District of Illinois has jurisdiction as this cause of action arises under Title VII of the Civil Rights Act of 1964.

4.  The U.S. EEOC issued a Right to Sue Letter for Charge No. 21B-2006-01998 on April 21, 2008 which was served on Mr. Ratleff via Certified Mail on April 23, 2008 (see attached).

5.  Venue is proper in this District and Division because the events detailed herein occurred while Plaintiff was employed in the Northern District of Illinois, Eastern Division.

### III. STATEMENT OF FACTS

6.  PERFECTION EQUIPMENT designs and sells refrigerated beer dispensing systems (commercial keg beer refrigeration and dispensing systems as well as condiment and soda dispensing).

7.  Mr. Ratleff began working for PERFECTION EQUIPMENT on March 2, 2005 as a Sales Engineer.

8.  Mr. Ratleff was hired by Alan Hale, Operations Manager.

9.  Between March 2, 2005 and May 12, 2006, Mr. Ratleff was under the direct training and supervision of Bob Barnhisel (non-African-American/Black), Sales and Installation Coordinator.

10. Mr. Ratleff's duties included, among other things, the servicing of PERFECTION EQUIPMENT accounts, the sale of PERFECTION EQUIPMENT products and services and the development of sales quotes for such products and services.

11. During the time period between March 2, 2005 and May 12, 2006, Mr. Ratleff experienced a number of incidents which increasingly led him to believe he was being discriminated against based upon his race and color.

12. During the fourteen-month tenure of Mr. Ratleff's employment as a Sales Engineer, he never received printed business cards despite repeated requests to the Purchasing Director, Gene Wood. His predecessor, Jeffrey Kaplan was supplied printed business cards and Tad Domek, hired several months after Mr. Ratleff, received printed business cards several days after being hired. Neither Mr. Domek nor Mr. Kaplan are African-American/Black.

13. During the fourteen-month tenure of Mr. Ratleff's employment as a Sales Engineer, Mr. Barnhisel joked that Mr. Ratleff was hired as his "secretary."

14. During the fourteen-month tenure of Mr. Ratleff's employment as a Sales Engineer, Mr. Barnhisel repeatedly "talked down" to Mr. Ratleff in a condescending manner as if he were stupid.

15. During the fourteen-month tenure of Mr. Ratleff's employment as a Sales Engineer, Mr. Barnhisel repeatedly demanded that Mr. Ratleff perform menial tasks such as "fetching files" that were not appropriate for a Sales Engineer.

16. On January 24, 2006, Mr. Ratleff was attempting to discuss a sales quote with Mr. Barnhisel as part of Mr. Ratleff's training, when he leaned on Mr. Barnhisel's desk.

17. Mr. Barnhisel abruptly told Mr. Ratleff not to touch his desk. When Mr. Ratleff asked Mr. Barnhisel to explain himself, Mr. Barnhisel simply reiterated his demand that Mr. Ratleff not touch his desk.

18. On Friday, January 27, 2006, Mr. Ratleff delivered a written memo to Mr. Hale describing Mr. Barnhisel's conduct. In his memo, Mr. Ratleff specifically requested a meeting to discuss the implications of Mr. Barnhisel's unusual, irrational and unexplained demand; stating that it was affecting his training. Mr. Ratleff further stated

that since the incident, Mr. Barnhisel had been preparing all of the quotes by himself and not involving Mr. Ratleff in the training process.

19. On Monday, February 13, 2006, Mr. Ratleff delivered a *second* memo to Mr. Hale, again requesting a meeting to discuss Mr. Barnhisel's conduct (the first memo had not been addressed and no meeting was scheduled in the two weeks that followed).

20. On February 28, 2006, Mr. Ratleff delivered a *third* memo to Mr. Hale, who had still not scheduled a meeting or addressed Mr. Ratleff's concerns.

21. Upon receipt of a third request, over a period of 30 days, Mr. Hale finally held a meeting with Mr. Ratleff, Mr. Barnhisel and Kathy Pino (Administration).

22. Much to Mr. Ratleff's surprise, Mr. Hale accused Mr. Ratleff of having an "obvious personality problem" with Mr. Barnhisel which was "obstructing progress" and "disrupting operations." Mr. Hale also warned Mr. Ratleff about the "overall perception" of his lack of competence.

23. Mr. Ratleff was specifically instructed to work more closely with Mr. Barnhisel and was told that another meeting would be held in 30 days.

24. Mr. Hale memorialized the events of the meeting in a memo to Mr. Ratleff dated March 3, 2006.

25. Prior to complaining about Mr. Barnhisel's conduct, Mr. Ratleff had never received any type of negative performance review or heard any indication from management that his performance was below expectation.

26. On March 10, 2006, Mr. Ratleff delivered a fourth memo to Mr. Hale stating that his original concerns with Mr. Barnhisel's conduct were not addressed. He also stated that he needed specific examples of his lack of competency so that he could make the

4

desired improvements; indicating that a lack of "competency" was never mentioned prior to his memo concerning Mr. Barnhisel's conduct.

27.    Following the meeting and Mr. Ratleff's fourth memo, Mr. Barnhisel told Mr. Ratleff that he was instructed not to train him anymore, which directly conflicted with Mr. Hale's instructions at the meeting. Mr. Barnhisel willfully refused to provide specific examples of Mr. Ratleff's incompetence or divulge who gave him this alleged directive to willfully and intentionally cease training efforts.

28.    Following the meeting and Mr. Ratleff's fourth memo, Mr. Sanford Hahn (President) sarcastically stated to Mr. Barnhisel that the "world is coming to an end" because Tiger Woods (a black male) was "ranked #1." Mr. Hahn's statement was willfully and intentionally made in Mr. Ratleff's presence while he was working at his desk. Based upon Mr. Hale's previous accusation that Mr. Ratleff had a personality conflict when he complained about Mr. Barnhisel's conduct, Mr. Ratleff did not voice his concern with the racially inappropriate comment, although he understood Mr. Hahn's implication that a black man should not be the best golfer.

29.    Despite Mr. Hale's specific written directive that a second meeting would be held 30 days after the initial meeting, Mr. Hale failed to hold such a meeting.

30.    On May 10, 2006, Mr. Ratleff received a memo from Mr. Hale informing him that there would be a "restructuring" of the sales department and that as a result, his position would be eliminated and he would be terminated as of Friday, May 12, 2006.

31.    Following Mr. Ratleff's termination he was replaced by a non-African American/Black.

## IV. CAUSES OF ACTION

**COUNT 1:    RACE/COLOR DISCRIMINATION**

32. Mr. Ratleff is African-American/Black.

33. PERFECTION EQUIPMENT discriminated against Mr. Ratleff by treating him differently than non-African-American/Black employees, treating him in a manner that can only be explained by racial animus, terminating his employment, and replacing him with a non-African-American/Black employee when his position was allegedly being eliminated in a "restructuring."

34. Despite the fact that Mr. Ratleff repeatedly complained to upper-level management, the discrimination was ignored and allowed to continue to the point of termination.

35. The actions of Alan Hale, Bob Barnhisel and PERFECTION EQUIPMENT were committed with malice or reckless disregard for Mr. Ratleff's rights.

36. As a result of PERFECTION EQUIPMENT'S conduct, Mr. Ratleff suffered economic damages.

**COUNT 2:    RETALIATION**

37. Following Mr. Ratleff's written complaint to Mr. Hale, PERFECTION EQUIPMENT intentionally retaliated by bullying Mr. Ratleff; accusing him of incompetence and of having a personality conflict that disrupted operations.

38. Following Mr. Ratleff's written complaint to Mr. Hale, PERFECTION EQUIPMENT retaliated by willfully refusing to train Mr. Ratleff.

39.  Following Mr. Ratleff's written complaint to Mr. Hale, PERFECTION EQUIPMENT retaliated by willfully, recklessly and intentionally terminating Mr. Ratleff under the false pretense of "restructuring."

40.  The actions of Mr. Hale and PERFECTION EQUIPMENT were committed with malice or reckless disregard for Mr. Ratleff's rights.

41.  As a result of PERFECTION EQUIPMENT'S conduct, Mr. Ratleff suffered economic damages.

**WHEREFORE**, Mr. Ratleff demands a **trial by jury** and prays that a judgment be entered against defendants for:

1.  Compensatory damages;
2.  Punitive damages;
3.  Statutory attorney's fees and costs; and,
4.  Any other remedy the court sees fit, including court orders or injunctions, based upon the evidence presented at a trial on the merits.

Respectfully submitted,

7-18-08

*Attorney for Plaintiff*
ROBERT C. SCREMIN (6282240)
1829 N. Milwaukee Avenue
Chicago, IL 60647
312.730.6712
rscremin@lawyer.com

7

EEOC Form 161 (2/08)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Tim Ratleff<br>1040 W. Grandville #505<br>Chicago, IL 60660 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

Certified Mail 7001 1940 0003 8825 3696

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2006-01998 | Karen Lanners,<br>Investigator | (312) 353-0902 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

John P. Rowe,
District Director

4/21/2008
(Date Mailed)

Enclosures(s)

cc:   **PERFECTION EQUIPMENT INC**